**Exhibit A**

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

| | | |
|---|---|---|
| CREDIT BUREAU SYSTEMS, INC., d/b/a/ AMBULANCE MEDICAL BILLING, | ) | |
| Plaintiff, | ) | Case No. 5:26-cv-00167-BJB |
| v. | ) | |
| PEMBROKE RESCUE SQUAD, INC., | ) | |
| Defendant. | ) | |

## AMENDED COMPLAINT

Comes now Plaintiff, Credit Bureau Systems, Inc., d/b/a Ambulance Medical Billing, by and through counsel, and for its cause of action against the Defendant, Pembroke Rescue Squad, Inc., would show unto the Court as follows:

## PARTIES

1. Plaintiff, Credit Bureau Systems, Inc., d/b/a Ambulance Medical Billing (hereafter "AMB" and/or "Plaintiff") is a corporation duly organized and existing under the laws of the Commonwealth of Kentucky authorized to do, and doing, business in McCraken County, Kentucky.

2. Defendant, Pembroke Rescue Squad, Inc. (hereafter "Defendant" or "Pembroke") is a corporation organized and existing under the laws of the State of

North Carolina with its principal office located at 564 Candy Park Road, Pembroke, North Carolina 28372.

## JURISDICTION AND VENUE

3. Pembroke is subject to the jurisdiction of this Court pursuant to KRS 454.210(2)(a), by virtue of having transacted business in this Circuit as shown herein. Pembroke was previously served by the Clerk of this Court issuing Summons to Pembroke and sending the Summons by certified mail, to Pembroke Rescue Squad, Inc., c/o its Registered Agent, Matthew Locklear, P.O. Box 385 Pembroke, North Carolina 28372.

4. Venue is proper in this Court as the acts alleged giving rise to this Complaint occurred in this Circuit, and the parties agreed that in the event of any dispute or disagreement the sole and exclusive venue and jurisdiction for hearing such a dispute shall be in McCracken County, Kentucky within this District.

5. AMB is an ambulance billing service that specializes in billing and obtaining reimbursement for goods and services provided and/or rendered by ambulance services to medical patients.

6. Pembroke is an ambulance service that specializes in transporting patients to and from medical facilities in and around Robeson County, North Carolina.

7. On or about May 26, 2022, AMB and Pembroke entered into a written service agreement, effective July 1, 2022, whereby AMB agreed to provide billing services, and seek to obtain reimbursement, for goods and services rendered by

Pembroke on behalf of its patients (hereby the "Service Agreement"). A true and correct copy of the Service Agreement is attached hereto as Exhibit A.

8. The initial term of the Service Agreement was for three (3) years.

9. The Service Agreement became effective with ambulance runs and the claims therefrom arising on and after July 1, 2022, and applied to all goods and services provided by Pembroke on and after July 1, 2022, during the term of the Service Agreement.

10. Pursuant to the Service Agreement, Pembroke also agreed that AMB would be the "sole and exclusive" provider of the services described in the Service Agreement.

11. Pursuant to the Service Agreement, as consideration for AMB's services, Pembroke agreed to pay a fee of 7.55% per month of all money collected by Pembroke after July 1, 2022, during the term of the Service Agreement.

12. In order to implement the Service Agreement, and for Pembroke to be able to utilize AMB's billing system, AMB supplied certain computer hardware, licenses to use cloud-based software, and training (hereafter "Equipment"). The amount for the Equipment set forth in the Service Agreement initially provided to Pembroke was $9,500.00.

13. The initial term of the Service Agreement terminated effective June 30, 2025, and pursuant to its terms, the initial term automatically renewed for an additional three (3) year term from July 1, 2025 through and including June 30, 2028.

14. As part of this second term, on or about October 12, 2025, AMB provided Pembroke with a subscription/license to use ESO, a cloud-based electronic patient care reporting (ePCR) system, as additional Equipment under the Service Agreement. The annual subscription/license paid for and provided by AMB to Pembroke runs through October 11, 2026.

15. AMB performed its obligations under the Service Agreement.

16. On or about April 25, 2026, Pembroke terminated the Service Agreement and directed AMB to cease and desist from all billing activity.

17. As contemplated by the Service Agreement, AMB sent monthly bills to Pembroke setting forth the fees Pembroke owed to AMB for the month ended January 31, 2026, February 28, 2026, and March 31, 2026.

18. The fees due and owing by Pembroke to AMB, as set forth in each statement, were a fixed and liquidated obligation due and owing by Pembroke to AMB.

19. Pembroke breached the Service Agreement by failing to pay the fees, as reflected in the monthly statements, in the time and manner required by the Service Agreement.

20. Pursuant to the Service Agreement, Pembroke was required to provide AMB with 90 days' written notice of its intent to terminate the Service Agreement, before terminating the Services Agreement. Pembroke breached the Services Agreement by failing to provide the required written notice of its intention to terminate.

21. Because the Service Agreement required Pembroke to give AMB 90-days' written notice of its intent to terminate, the termination will not become effective until July 25, 2026, 90 days after the April 25, 2026 letter (the "Effective Date").

22. By requiring AMB to cease and desist from all billing activity immediately as of July 25, 2026, Pembroke prevented AMB from performing the agreed upon services under the Service Agreement through the Effective Date.

23. By requiring AMB to cease and desist from all billing activity immediately as of July 25, 2026, Pembroke also prevented AMB from performing the agreed upon services under the Service Agreement through and including November 25, 2026, the 120-day Wind Down Period contemplated by the Service Agreement, following the termination Effective Date.

**COUNT I**
**BREACH OF CONTRACT**

24. AMB adopts and incorporates by reference the allegations in numerical paragraphs 1-23 as if set forth verbatim herein.

25. The parties entered into the Service Agreement pursuant to the terms stated therein.

26. AMB performed its obligations under the Service Agreement.

27. Pembroke has breached its contractual obligations to AMB by failing and refusing to pay liquidated amounts due and owing for services rendered for the months ended January 31, 2026, February 28, 2026, and March 31, 2026.

28. AMB has been damaged as a result of Pembroke's breach of the Service Agreement in an amount in excess of the jurisdictional limits of this Court.

**COUNT II**
**BREACH OF CONTRACT**

29. AMB adopts and incorporates by reference the allegations in numerical paragraphs 1-28 as if set forth verbatim herein.

30. In addition to failing and refusing to pay for services already rendered and fees due and owing to AMB, as a result of Pembroke's breach of the Service Agreement, AMB is owed the additional fees that AMB would have been entitled to for revenue earned by Pembroke for ambulance runs up to July 25, 2026, the Effective Date of Pembroke's termination of the Service Agreement.

31. AMB has been damaged as a result of Pembroke's breach of the Service Agreement in an amount in excess of the jurisdictional limits of this Court.

**COUNT III**
**BREACH OF CONTRACT**

32. AMB adopts and incorporates by reference the allegations in numerical paragraphs 1-31 as if set forth verbatim herein.

33. In addition to the foregoing, as a result of Pembroke's breach of the Service Agreement, AMB is owed additional fees that AMB would have been entitled to during the 120-day Wind Down period following the Effective Date of Pembroke's termination, through and including November 25, 2026, as set forth in the Service Agreement.

34. AMB has been damaged as a result of Pembroke's breach of the Service Agreement in an amount in excess of the jurisdictional limits of this Court.

## COUNT IV
## BREACH OF CONTRACT AND/OR QUANTUM MERUIT AND/OR UNJUST ENRICHMENT AND/OR CONVERSION

35. AMB adopts and incorporates by reference the allegations in numerical paragraphs 1-34 as if set forth verbatim herein.

36. Pembroke also owes AMB for the pro-rata cost of the subscription/license to use ESO, a cloud-based electronic patient care reporting (ePCR) system, that AMB provided to Pembroke, as additional Equipment under the Service Agreement.

37. Alternatively, Pembroke owes AMB for the pro-rata cost of the subscription/license to use ESO, a cloud-based electronic patient care (ePCR) system, that AMB provided to Pembroke, under the theory of quantum meruit.

38. Alternatively, Pembroke owes AMB for the pro-rata cost of the subscription/license to use ESO, a cloud-based electronic patient care (ePCR) system, that AMB provided to Pembroke, because it would be unjustly enriched if not required to reimburse AMB the pro rata cost.

39. Alternatively, Pembroke has converted for its own use and benefit the Equipment provided by AMB by not reimbursing AMB for the pro-rata cost of the subscription/license to use ESO.

## COUNT V
## BREACH OF CONTRACT

40. AMB adopts and incorporates by reference the allegations in numerical paragraphs 1-39 as if set forth verbatim herein.

41. Pursuant to the Service Agreement, Pembroke agreed that AMB would be the sole and exclusive provider of the services described in the Service Agreement.

42. Upon information and belief, Pembroke breached the Agreement by billing certain ambulance runs itself, during the term of the Service Agreement, or by using a different billing agent.

43. AMB has been damaged as a result of said breach and is entitled to the fees it would have earned on all money recovered by Pembroke for all ambulance runs by Pembroke during the term of the Service Agreement, that were billed directly by Pembroke or by any other billing agency.

44. AMB has been damaged as a result of Pembroke's breach of the Service Agreement in an amount in excess of the jurisdictional limits of this Court.

**COUNT VI**
**FRAUD**

45. AMB adopts and incorporates by reference the allegations in numerical paragraphs 1-44 as if set forth verbatim herein.

46. Pursuant to the Service Agreement, Pembroke agreed that AMB would be the sole and exclusive provider of the services described in the Service Agreement.

47. On or about April 9, 2026, Pembroke changed a password to a critical system that interfered with AMB's ability to perform the services required of it under the Agreement.

48. AMB asked Pembroke to restore its credentials so it could access the system, but Pembroke made various excuses and failed to do so.

49. After Pembroke interfered with AMB's ability to perform the services required of it under the Agreement, Pembroke began reducing the volume of ambulance runs for AMB to bill.

50. On or about April 24, 2026, Pembroke terminated AMB, without notice, and AMB, through its CFO Michael Lavender, inquired of Pembroke via phone call whether they were already working with another billing company.

51. Pembroke, through its agent Chief Matt Locklear, affirmatively denied that they were working with another billing company as of April 24, 2026, but on information and belief, Pembroke's denial was a knowing misrepresentation made in an attempt to cover up its conduct and to deceive AMB, and the April 9, 2026, change of credentials preventing AMB from having access to a critical system was part and parcel of its coordinated cover-up of its activities.

52. Upon information and belief, Pembroke billed certain ambulance runs itself, or utilized a different billing agent, during the term of the Service Agreement in violation of the Service Agreement.

53. Pembroke intended to, and did, intentionally deceive AMB with respect to the ambulance runs that it either billed itself or through a different billing agency.

54. In order to carry out this deception, Pembroke misrepresented and/or concealed material facts intended to gain an unauthorized benefit.

55. Pembroke's misrepresentation was intended to, and did, induce AMB not to bill Pembroke for contingent fees due associated with ambulance runs that it either billed directly or were billed by the new billing company that it was working with.

56. As a result of Pembroke's fraud, AMB is entitled to compensatory damages, measured as the fees it would have earned on all money recovered by Pembroke for all ambulance runs during the term of the Service Agreement that were billed by Pembroke or some other billing agent.

57. As a result of Pembroke's fraud, Pembroke should be made to pay punitive damages to punish Pembroke for its intentional misrepresentations in an amount determined by a jury.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Credit Bureau Systems, Inc., d/b/a/ Ambulance Medical Billing, demands as follows:

1. A trial by jury.

2. Judgment against Defendant, Pembroke Rescue Squad, Inc., for all damages incurred as a result of Defendant's breach of the Service Agreement, as described herein and as the proof may show.

3. Judgment against Defendant, Pembroke Rescue Squad, Inc., for compensatory and punitive damages for its fraudulent conduct as described herein and as the proof may show.

4. For pre- and post-judgment interest at the highest rate allowed by law, its costs incurred, and reasonable attorney's fees incurred herein, all as provided for in the Service Agreement.

5. For any and all other relief to which it may appear entitled under the circumstances.

Respectfully submitted,

KATZ LAW

*/s/ Brian S. Katz*

BRIAN S. KATZ
2226 BROADWAY, SUITE 1
POST OFFICE BOX 2903
PADUCAH, KENTUCKY 42002-4903
(270) 575-3939
brian@brianskatz.com

*Attorney for Plaintiff*